Stone et al. *v.* Moore et al.

Henry Stone *et al.,* Plaintiffs in Error, *v.* Robert S. Moore *et al.,* Defendants in Error.

ERROR TO COOK.

The practice of demurring to an answer is not to be tolerated, and is bad.

An answer is in the nature of a plea, and should either deny the facts stated in the bill, or show some new matter in avoidance of the facts admitted. Conclusions of law should not be set up in an answer; any number of defenses may be set up by it, as a consequence of the same state of facts.

If an answer is objectionable, exceptions should be taken to it; if not, it should be set down for hearing. If obnoxious to exceptions, a further answer will be required, and if not filed in the time directed, the bill may be taken for confessed. If a supplemental answer is insufficient, which is to be filed at the costs of the delinquent party, he may be proceeded against for contempt.

If exceptions are not taken, and no replication is filed, the answer is taken as true, and is to be set for hearing on bill, answer and exhibits, without other evidence, unless it be matter of record, referred to in the answer.

The complainants by their bill allege that they were, during the month of December, 1859, and subsequent thereto, partners, and that as such, said complainants, during the month of December, and subsequently thereto, placed in the hands of defendant, Moore, in all the sum of $1,950, to be invested in corn for complainants. That Moore, shortly after the receipt of said money, invested the same in corn for the complainants, and held the same in his warehouse, in trust for complainants, and executed to complainants his two warehouse receipts for three thousand bushels of corn each, making six thousand bushels, said receipts holding said corn in store in trust for complainants.

That about the 1st day of April, 1860, said warehouse and contents, including said corn, was totally consumed by fire.

That the grain and produce therein were insurred for about $25,000 by the defendants, the said insurance companies. That said complainants do not know the amounts respectively insured by said insurance companies, and ask that the said defendants may set forth and discover the same in their answers to said bill.

That the other defendants, Norton, Walter & Rogers, had taken an assignment of said policies from Moore, for the purpose of placing said trust fund arising from said corn so insured beyond the reach of complainants. That said insurance moneys were yet unpaid, and that Moore, and Norton, Walter & Rogers were negotiating a settlement of their claims, for the purpose of having the whole of said insurance fund paid into the hands of Norton, Walter & Rogers, to the exclusion of complainants. That previous to said fire, said Norton, Walter & Rogers had procured a policy of insurance upon the contents of said ware-

house for a large amount, the premium therefor having been paid by Moore.

That Moore has been, and then was, colluding with Norton, Walter & Rogers, for the purpose of putting said trust fund beyond the reach of the complainants. That said Norton, Walter & Rogers pretended that Moore was indebted to them for advances, and that said policies were assigned to secure such indebtedness, when in fact Norton, Walter & Rogers held property of Moore, on commission, of a greater value than the amount of said indebtedness.

That the value of said corn was $2,400, and was covered by said policies of insurance, and that $2,400 of said money so due from said insurance companies arose from the loss of the complainants' corn, so consumed by fire. That the money so due and arising from the loss of said corn, was in equity and good conscience a trust fund in the hands or possession of said companies, belonging to complainants. That complainants have an equitable lien thereon, as being the product of their money so placed in trust in the hands of defendant, Moore, and so invested in said grain, so insured, and so destroyed by fire. That process should issue, and defendants should be compelled to answer. That an injunction should issue, etc.

*Pursuant to the prayer of the bill, an injunction issued.*

Defendants all enter their appearance, and file their motion in writing to dissolve said injunction, which motion is in the words and figures following, to wit:

The defendants come, by their solicitors, and move the court to dissolve the injunction herein, and in support thereof assign the following reasons:

1st. The bill contains no such statement of facts as justifies an injunction.

2nd. The bill does not show a case where a court of chancery has jurisdiction.

3rd. If the complainants have any rights, they can be enforced in a court of law.

4th. The complainants have no interest in the insurance policies or the moneys due thereon, as shown by said policies brought into court, ready to be produced and shown.

Afterwards defendants, Moore, and Norton, Walter & Rogers, filed their answers, by which answer of the said Moore it is admitted in substance that he received the $1,950 of complainants' money to invest in grain for them. That he purchased therewith six thousand bushels of corn, and delivered to complainants said warehouse receipts, expecting to receive for making such purchase and the storing of said corn, five cents per bushel. That said commissions have not been paid. That said

warehouse and contents, including complainants' corn, were destroyed by fire on the 16th of March, 1860. That he had taken out policies of insurance from each of said insurance companies, and that said policies covered a portion of the grain destroyed in said warehouse, " but what portion this respondent is advised is a question of law, and as a full answer to all that portion of the bill, this respondent sets out copies of the said policies."

That he had assigned one of said policies, to wit, the one issued by the Peoria Marine and Fire Insurance Company, to Norton, Walter & Rogers, but denies that such assignment was made for the purpose of placing the money due thereon beyond the reach of the complainants. Admits that the money is yet unpaid on all of said policies, and that himself and said Norton, Walter & Rogers are negotiating a settlement of said policies, and that the money will be paid to Norton, Walter & Rogers; denies that he is colluding with Norton, Walter & Rogers, or any other person, to place said money beyond the reach of complainants, or that he is liable to them for the grain so destroyed; and if they are entitled to any of said insurance money, is willing it should be paid to them.

" And as to all that portion of the bill relative to the account between him and said Norton, Walter & Rogers, the transactions between them and the indebtedness between them, this respondent demurs, and says he is not, by the rules of equity, bound to answer the same."

Admits that complainants' corn, when destroyed, was worth $2,400. Denies all other matters not already admitted, denied, or avoided. Prays that the injunction may be dissolved, and he dismissed.

Insurance Policy, No. 1, of Citizens' Fire Insurance Company, insures R. S. Moore against loss by fire to the amount of $4,000 on grain, his own or held by him in trust, or on commission, or sold but not delivered, contained in Moore's warehouse; loss payable to Norton, Walter & Rogers. Condition No. 3 provides that if the property to be insured be held in trust or on commission, it must be represented to the company and expressed in the policy in writing. Condition No. 4 provides that goods held on storage must be separately and specifically insured.

Policy No. 2. The Peoria Marine and Fire Insurance Company insures Robert S. Moore against loss by fire to the amount of $5,000, on 5,000 bushels of wheat, in store in his warehouse. Condition No. 6. Goods held in trust or on commission, are to be insured as such. Goods on storage must be separately and specifically insured.

Policy No. 3. The Niagara Fire Insurance Company insures

Robert S. Moore against loss by fire to the amount of $3,000, " on grain, his own or held by him in trust or on commission, or sold but not delivered," contained in Moore's warehouse. No conditions attached. Loss payable to Norton, Walter & Rogers.

Policy No. 4. The Western World Insurance and Trust Company insures Robert S. Moore against loss by fire, to the amount of $5,000, on shelled corn in store in Moore's warehouse. Condition No. 3. Property held in trust, or on commission, must be insured as such. Goods on storage must be separately and specifically insured.

Policy No. 5. The Unity Fire Insurance Association of London, insures R. S. Moore $3,000 on grain, his own or held by him in trust or on commission, or sold but not delivered ; in Moore's warehouse. Loss payable to Norton, Walter & Rogers. No conditions.

The answer of Norton, Walter & Rogers, admits that Moore's warehouse was destroyed by fire, with its entire contents, on the 16th of March, A. D. 1860, and that the property therein was partly insured by the companies named in the bill, and the answer of Moore; admits that the policy of the Peoria Marine and Fire Insurance Company was assigned by said Moore on the 2nd day of April, 1860, to Norton, Walter & Rogers, and sets forth assignment. Denies that any other policy has been so assigned, or that the assignment was made, or the money directed, in other policies, to be paid to Norton, Walter & Rogers, for the purpose of placing said money beyond the reach of complainants. Denies all fraudulent intent in the transactions, but avers that the same were made upon good consideration, to secure them for any balance that might be due from Moore to them. Admits that the moneys due on said policies are unpaid, and that Moore, and Norton, Walter & Rogers are negotiating a settlement for the loss with the insurance companies ; but denies any attempt to collect any money for the loss of complainants' grain, or to avoid any right to indemnity which complainants may have.

Respondents deny that they procured any policy in their own name, other than those set out in Moore's answer ; deny collusion with Moore for the purpose of putting the moneys due on said policies beyond the reach of complainants, but are willing said companies should establish their claim and receive their money, but deny their right to interfere with the settlement of said respondents, Moore, and Norton, Walter & Rogers.

" And as to all that part of said bill of complaint which charges that there is nothing due from Moore to the firm of Norton, Walter & Rogers, and seeks to inquire into the transactions

between them, these respondents demur, and say that they are not bound to answer the same;" say that the claim of said Moore on which they are negotiating for a settlement, is fully contained in an affidavit of said Moore—a copy of which is annexed.

Pray to be dismissed.

Affidavit of R. S. Moore states that he had in his warehouse, among other things, 8,143 bushels of corn; that he had also 5,000 bushels of corn sold but not delivered to the purchaser; also that he had $2,155.27 due him for storage and commission on other grain not enumerated, but which was in store, and destroyed by fire; also that he had advanced $1,161.25 to the owners of the grain so stored as aforesaid; and states that he was insured in the companies named above.

Then follow the affidavits of value of grain, etc., as required by the insurance companies.

On the 21st day of June, 1860, respondents filed a motion to dissolve the injunction, which motion is as follows:

This day come the said defendants, and move the court to dissolve the injunction heretofore granted in said cause upon the bill of complaint filed therein and answer thereto.

On the 27th day of June, 1860, defendant Moore filed his supplemental answer, in and by which it is alleged that said complainants never authorized said respondent Moore to insure their corn, that it was not the custom of warehousemen at Havanna to insure property held as warehousemen, or on storage; that he did not intend to insure property held by him as a warehouseman; that he gave no representation to any of the companies that would cover the corn of complainants, and paid no premium therefor; that he never reported to complainants that he had insured their corn, because he had not done so, and that consequently they could not have adopted or affirmed any act of said respondent with reference thereto; that complainants paid no part of the premium for the insurance. Denies that their corn was covered by said policies.

Prays as heretofore prayed.

This cause came on to be heard upon the motion to dissolve the injunction, and the injunction was dissolved as to all the policies except that of the Western· World Insurance and Trust Company.

On the 11th day of July, 1860, the said Western World Insurance and Trust Company filed their answer, in which the company denies all the matters and things in said bill alleged, concerning them, and as to all other matters and things, say that they are strangers thereto.

12

Complainants filed a demurrer to the supplemental answer of defendant Moore, in the words and figures following, to wit:

The said complainants, not confessing or acknowledging any of the matters contained in the supplemental answer of said defendant, Moore, to be true in manner and form as is alleged and set forth, demur thereto for the causes following:

1. That it does not appear that the facts therein stated were unknown to said defendant at the time of filing his original answer in said cause.

2. That the matters and things therein set forth and alleged as facts, are matters of law for the consideration and decision of the court only, and upon which allegations no issue can be taken by said complainants.

3. That so much of the allegations of said supplemental answer as alleged " that the complainants never authorized and directed this respondent (meaning said defendant) to insure," and " that it was not the custom of this respondent or other warehousemen at the place where he transacted business to insure property held as warehousemen, on storage," and " that this respondent never reported to complainants that he had made any insurance, because he had not done so in fact," and " that they never adopted or affirmed any act of this respondent with reference thereto," and " that the complainants never paid any portion of said premiums." The complainants say that all of his allegations above quoted from said supplemental answers are, and each of them is immaterial and impertinent, for the reason that the policy issued, and the law determines the rights of the parties under it, and the same having been procured by a trustee, it inures by operation of law to the *cestui que trust.*

4. That said supplemental answer is in other respects insufficient and informal.

It was agreed by and between the parties, that the answer, and supplemental answer, of said defendant, Moore, and the exhibits thereto attached, shall be taken and considered as the answers of said defendants, the insurance companies, complainants assuming the right of exception to the sufficiency or competency of said answers; and thereupon, said cause coming on to be heard upon bill and answers, the court found that complainants are not entitled to the relief prayed for, and ordered, adjudged and decreed, that the complainants' bill, filed in said cause, be dismissed for want of equity, at the cost of complainants.

The following are the errors assigned in said record:

The Circuit Court erred in dismissing said complainants' bill of complaint, and delivering final decree in favor of said defendants.

Said Circuit Court erred in not granting and decreeing said complainants, on the final hearing of said cause, the relief prayed for in said bill of complaint.

Said court erred in not requiring said Moore, and Norton, Walter & Rogers, to disclose and set forth in their answers, the actual condition of accounts existing between said Moore, and the said Norton, Walter and Rogers, and in sustaining the demurrers contained in said answers to the portions of the bill containing the charges relating thereto.

Said Circuit Court erred in making final decree of dismissal of complainants' bill at their cost, when by the law of the land, said court should have decreed in favor of complainants, and against said respondents, for the sum of two thousand four hundred dollars, and interest and costs.

BRACKETT, LUMBARD & SMITH, for Complainants in Error.

W. C. GOUDY, for Defendants in Error.

BREESE, J.   The principal question in this case comes up on Moore's supplemental answer of June 27, to the complainants' bill.   In that answer, he states that complainants never authorized him to insure their corn on storage—that it was not the custom of warehousemen at Havanna to insure property held as warehousemen or on storage; that he did not intend to insure property held by him as a warehouseman—that he gave no representation to the companies that would cover the corn of the complainants, and paid no premium therefor—that he never reported to complainants that he had insured their corn, because he had not done so, and consequently, they could not have adopted or affirmed any act of his with reference thereto—that complainants paid no part of the premium for the insurance; and denies that their corn was covered by the policies.

To this answer a demurrer was filed and overruled, and the injunction dissolved and bill dismissed.

This practice of demurring to an answer we do not understand, and must reprobate it.   It is in violation of all the rules of chancery practice and proceedings known to us.

An answer in chancery has, in general, a two-fold property. First, meeting the allegations of the bill, and second, a statement to the court of the nature of the defense on which the defendant means to rely ; and in this respect the answer fulfills the duty of a plea, or a series of pleas, either denying facts upon which the plaintiff's equity, as stated in the bill, arises, or by confessing such facts, and avoiding them by the introduction or some new matter, from which contrary inferences may be drawn.

2 Daniel's Ch. Prac. 814. He is not to state the conclusions in law which he intends to deduce, or has deduced, from the facts he has set out,—that would be contrary to all the principles of good pleading, but he should merely state the facts intended to be proved, and leave the inference of law to be drawn from them by the court, after argument. He may set up any number of defenses in his answer, as the consequence of the same state of facts, which his case will allow, or ingenious counsel suggest; but the defenses must be consistent with each other. Ib. 815, 816.

If, then, the complainant considers the defendant's answer does not meet the demands of the law, or finds that the answer contains scandalous or impertinent matter, or that it does not sufficiently answer the allegations and charges in the bill, or is otherwise defective, he must file exceptions to it, in which he must state such parts of the bill as he conceives are objectionable. Or if the answer be not obnoxious to exceptions, it may be set down for hearing, and its sufficiency as a defense tested; this is equivalent to a demurrer at law. If it sets up new matter, which the complainant deems irrelevant, and as forming no sufficient grounds of defense, he can except to the answer, for impertinence. If the exceptions are allowed, either by the master on reference, or by the court, without a reference, and the answer adjudged insufficient, the defendant must file a further answer within such time as the court shall direct, and on failure to do so, the bill will be taken for confessed. If such further answer is deemed insufficient, the defendant must file a supplemental answer, and pay all costs attendant thereon; if that shall be adjudged insufficient, he may be proceeded against for a contempt of court. Scates' Comp. 141, ch. 21, sec. 22; *Kitchell* v. *Burgwin*, 21 Ill. 43; *Fulton Co.* v. *Miss. & Wabash R. R. Co.*, ib. 366.

If no exceptions are filed, a replication is usually put in, which makes an issue between the parties. If there be no exceptions, on replication, the cause is set down for hearing on the bill and answer, and exhibits, if any, and the answer is taken to be true, and no evidence shall be received, unless it be matter of record to which the answer refers. Scates' Comp. 141, ch. 21, sec. 31.

In this case no exceptions were taken to the answers, nor were any replications filed, nor was the answer set down for hearing. The answers, therefore, setting forth facts constituting a defense, are to be taken as true, by force of the statute, and the injunction was properly dissolved, and the bill dismissed. The judgment must be affirmed.

*Decree affirmed.*